Filed 2/16/16  P. v. Taylor CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GARRETT JOHN TAYLOR,<br><br>    Defendant and Appellant. | 2d Crim. No. B261673<br>(Super. Ct. No. F485023)<br>(San Luis Obispo County) |

Garrett John Taylor appeals a judgment following conviction of vehicular manslaughter committed with negligence and while intoxicated, and the unlawful taking of a vehicle.  (Pen. Code, § 191.5, subd. (b)[1]; Veh. Code, § 10851, subd. (a).)  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

In the early morning of July 14, 2012, Justin Evans died when the all-terrain vehicle in which he was a passenger struck an oak tree on San Simeon Creek Road.  Evans, who was not wearing a seat belt, was ejected from the vehicle and died quickly from blunt force head trauma.  Taylor, the driver of the vehicle, suffered serious injuries but received treatment from emergency medical personnel and, later, a hospital.  An analysis of blood drawn from Taylor in the hospital revealed a blood alcohol content of 0.18 percent.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

Taylor and Evans were members of longtime ranching families in Cambria. The evening before, they attended a birthday party at Winsor Ranch, located in the hills above San Simeon Creek. The Winsor family used an all-terrain vehicle to transport guests and supplies from the ranch house to a pond where the gathering was held.

At approximately 3:00 a.m., guests Mark and Nancy Epstein left the ranch. They drove along a private road from Winsor Ranch to San Simeon Creek Road, which leads to Highway 1. As they drove along San Simeon Creek Road, they turned a bend in the roadway and saw lights shining on a tree. They stopped, backed up along the shoulder of the roadway, and investigated the lights. The Epsteins saw that an all-terrain vehicle had collided with the tree and was tilted downward onto an embankment. The tree and the vehicle were damaged.

As they approached, the Epsteins saw Evans lying approximately 10 to 15 feet away from the vehicle. They attended to him but found that he had no pulse and appeared to be dead. Inside the vehicle, Taylor lay unconscious across the center console. His upper torso was outside the passenger side of the vehicle and his feet were on the floor of the driver's side. Taylor's face was covered with blood and vomit and he emanated an odor of alcohol. The Epsteins attempted to remove him from the vehicle because he was struggling to breathe. The task was not easy because Taylor's pant cuff was caught by a metal gun rack affixed between the seats. Nancy Epstein "pull[ed] it up as hard as [she] could" to release the pant cuff, as Mark Epstein pulled Taylor through the passenger side of the vehicle.

When Nancy Epstein could not access a cellular telephone signal to summon assistance, she decided to return to Winsor Ranch. En route, she met other guests who were able to telephone for emergency assistance.

California Highway Patrol Officer John Ybarra arrived at the accident scene at 4:40 a.m. Based upon his investigation of the accident, he opined as to its cause: "The driver of the [vehicle], when negotiating that left curve in the road, didn't keep that vehicle on the paved portion of the road, so he drifted to the right, and as he tried to correct himself and put that vehicle back onto the paved portion of the road, he ran into a

2

tree." Ybarra also opined that Taylor had violated Vehicle Code section 22107, regarding unsafe turns, thereby causing the accident.

The Winsors did not give permission to Evans or Taylor to take the all-terrain vehicle that night. Tim Winsor testified that due to the mounting of the gun rack between the seats of the vehicle, it was not possible to slide from one seat to another. The all-terrain vehicle was not suitable for highway use or high speed driving.

*Accident Reconstruction Testimony*

California Highway Patrol Sergeant Timothy Neumann investigated the collision that morning and opined that Evans was the passenger and Taylor was the driver. Neumann observed that the vehicle's seat belts were fully retracted. Neumann based his opinion upon the mechanics of the collision, the position of Evans's body, and the injuries to Evans's left leg, among other things. The presence of Taylor's blood on the driver's side windshield and Evans's blood on the passenger side windshield was consistent with Neumann's explanation of the accident.

California Highway Patrol Officer Scott Peterson investigated the accident and reviewed the official reports. He determined that, based upon collision dynamics and the location of Evans's body, Taylor was the driver of the vehicle at the time of the accident.

Doctor Harold Segal, a neurosurgeon, testified that Taylor suffered a laceration on the left side of his head and that Evans's suffered injuries to the right side of his head. The location of these injuries, in Segal's opinion, implied that Evans was the driver of the vehicle and that Taylor was the passenger.

George Ripsom, an accident reconstruction expert for the defense, opined that Evans was the driver of the all-terrain vehicle during the accident. Ripsom believed that Taylor and Evans were ejected from the vehicle and that Taylor returned to the vehicle and then became unconscious. Ripsom based his opinion in part upon Evans's and Taylor's injuries.

*Conviction and Sentencing*

The jury convicted Taylor of vehicular manslaughter committed with negligence and while intoxicated (count 1), and the unlawful taking of a vehicle (count 2). (§ 191.5, subd. (b); Veh. Code, § 10851, subd. (a).) The trial court sentenced Taylor to a split sentence pursuant to section 1170, subdivision (h)(5)(B), consisting of four years in state prison, with the last 548 days to be served in mandatory supervision. The court imposed a two-year sentence regarding count 2, to be served concurrently. It also imposed a $2,400 restitution fine, a $2,400 parole revocation restitution fine (stayed), a $40 court security assessment, a $30 criminal conviction assessment, and various administrative fees, ordered victim restitution, and awarded Taylor 121 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8. subd. (a); Gov. Code, § 70373.)

Taylor appeals and contends that: 1) insufficient evidence supports his conviction of vehicular manslaughter, and 2) the trial court erred by not instructing sua sponte with a portion of CALCRIM No. 590 ["Gross Vehicular Manslaughter While Intoxicated (Pen. Code, § 191.5(a))"].

*DISCUSSION*

*I.*

Taylor argues that there is insufficient evidence that he violated a traffic law in a negligent manner to support his conviction of vehicular manslaughter pursuant to section 191.5, subdivision (b). (CALCRIM No. 591.) He suggests that the accident could have occurred in the absence of his negligence; e.g., Evans engaged in horseplay causing the vehicle to veer from the road, a reckless driver forced the all-terrain vehicle from the road, or a large animal suddenly appeared causing the accident.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (2015) 60 Cal.4th 966, 988; *People v. Jackson* (2014) 58 Cal.4th 724,

4

749.)  Our review is the same in a prosecution primarily resting upon circumstantial evidence.  (*Johnson*, at p. 988; *People v. Watkins* (2012) 55 Cal.4th 999, 1020.)  We do not redetermine the weight of the evidence or the credibility of witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].)  We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise.  (*People v. Streeter* (2012) 54 Cal.4th 205, 241, disapproved on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*Albillar*, at p. 60.)  Moreover, the testimony of a single witness is sufficient to prove a fact.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031.)

Sufficient evidence supports Taylor's conviction of vehicular manslaughter committed with ordinary negligence and while intoxicated.  Taylor took the all-terrain vehicle, which was not suitable for driving at high speeds or on a highway, without the Winsors' permission.  With a blood alcohol level of at least 0.18 percent, he drove it on San Simeon Creek Road at night, with Evans as a passenger.  Neither man wore seat belts.  Officer Ybarra conducted an investigation and opined that the cause of the accident was that Taylor did not stay on the roadway when he negotiated the left-hand turn; he drifted to the right, attempted to correct his path, and then struck the oak tree.  Ybarra stated that the unsafe turning movement in violation of Vehicle Code section 22107 caused the accident and Evans's death.  This evidence permits the reasonable inference that Taylor drove while under the influence of alcohol and negligently failed to keep the vehicle on the roadway as he negotiated the turn.

Taylor's speculation regarding the cause of the accident is just that – speculation.  It is not reasonable and credible evidence that another person or the unexpected appearance of a range animal caused the accident.  Accordingly, the

5

evidence, including the expert testimony of Ybarra, supports the judgment. (*People v. Richardson*, *supra*, 43 Cal.4th 959, 1030-1031.)

*II.*

Taylor contends that the trial court erred by not instructing sua sponte, that violating a traffic law while driving under the influence is insufficient alone to establish ordinary negligence. He points out that CALCRIM No. 590, pertaining to manslaughter committed with gross negligence and while under the influence of alcohol, contains this admonition. (*People v. Bennett* (1991) 54 Cal.3d 1032, 1039 [approving the instruction in prosecutions for gross vehicular manslaughter].)

Taylor points to no authority requiring this admonition in a prosecution for vehicular manslaughter committed with ordinary, as opposed to gross, negligence. Here the trial court properly instructed with CALCRIM No. 591 ["Vehicular Manslaughter While Intoxicated -- Ordinary Negligence (Pen. Code, § 191.5(b))"], regarding driving under the influence of alcohol and, while driving under that influence, committing an infraction or otherwise lawful act that might cause death. The court also instructed that the jury must determine that Taylor committed the act with ordinary negligence and that the prosecution alleged that he committed an unsafe turning movement in violation of Vehicle Code section 22107. In addition, the court defined ordinary negligence. In sum, the jury required proper and full instructions.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

6

Donald G. Umhofer, Judge

Superior Court County of San Luis Obispo

_____


Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jaime L. Fuster, Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.